UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **EDDIE DEAN MONTGOMERY** | * | **CIVIL ACTION NO. 14-3120** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **CAROLYN W. COLVIN, ACTING COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAG. JUDGE KAREN L. HAYES** |

### REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **REVERSED and REMANDED for further proceedings.**

### Background & Procedural History

Eddie Dean Montgomery protectively filed the instant application for Title II Disability Insurance Benefits on September 6, 2012. (Tr. 122-125, 137).[1] He alleged disability as of December 31, 2010, because of diabetes and high blood pressure, in addition to: back, stomach, wrist, knee, and leg problems. (Tr. 149). The state agency denied the claims at the initial stage of the administrative process. (Tr. 57-63, 65-68). Thereafter, Montgomery requested and received an April 18, 2013, hearing before an Administrative Law Judge ("ALJ"). (Tr. 31-56). In a July 24, 2013, partially favorable decision, the ALJ awarded benefits with a disability onset

---

[1] Montgomery filed a prior Title II application on March 28, 2012, which was denied initially on May 17, 2012, and apparently not further appealed. *See* Tr. 59, 137.

date of January 1, 2013.  (Tr. 14-26).  However, the ALJ denied disability for the period from the alleged onset of disability through December 31, 2012, finding at step five of the sequential evaluation process that Montgomery was able to make an adjustment to other work that exists in significant numbers in the national economy.  *Id*.

Montgomery appealed the adverse portion of the decision to the Appeals Council.  On September 3, 2014, however, the Appeals Council denied his request for review; thus the ALJ's decision became the final decision of the Commissioner.  (Tr. 1-3).

On October 28, 2014, Montgomery sought review before this court.  He alleges the following errors,

>    (1)    the ALJ failed to comply with Social Security Ruling 83-20 by not calling a medical expert to help determine plaintiff's disability onset date;
>
>    (2)    the ALJ's residual functional capacity assessment for the period prior to January 1, 2013, is not supported by substantial evidence; and
>
>    (3)    the ALJ erred by failing to address the testimony of plaintiff's lay witness and by not providing specific reasons for his credibility assessment.

**Standard of Review**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards.  *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).  Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed.  *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards.  *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v.*

*Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted).

### Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

> (1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

    (2)      An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

    (3)      An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

    (4)      If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

    (5)      If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## The ALJ's Findings

### I.    Steps One, Two, and Three

The ALJ determined at step one of the sequential evaluation process that the claimant did not engage in substantial gainful activity during the relevant period. (Tr. 20). At step two, he found that, from the date of alleged onset of disability through December 31, 2012, the claimant

4

suffered severe impairments of obesity and diabetes. *Id*.[2] Beginning January 1, 2013, the ALJ found that the claimant suffered severe impairments of degenerative disc disease of the lumbar spine, spinal stenosis, obesity, and diabetes. *Id*. He concluded, however, that these impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process. (Tr. 21).

## II.  Residual Functional Capacity

The ALJ next determined that, prior to January 1, 2013, Montgomery retained the residual functional capacity ("RFC") to perform the full range of medium work. (Tr. 22-23).[3]

---

[2]  The ALJ determined that, through December 31, 2012, the claimant's medically determinable impairments of stomach, wrist, and back problems were non-severe. (Tr. 21).

[3]  Medium work is defined and explained by Social Security Ruling 83-10:
> [t]he regulations define medium work as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds.  As in light work, sitting may occur intermittently during the remaining time.  Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms.
>
> The considerable lifting required for the full range of medium work usually requires frequent bending-stooping. (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist). Flexibility of the knees as well as the torso is important for this activity.  (Crouching is bending both the legs and spine in order to bend the body downward and forward).  However, there are a relatively few occupations in the national economy which require exertion in terms of weights that must be lifted at times (or involve equivalent exertion in pushing or pulling), but are performed primarily in a sitting position, e.g., taxi driver, bus driver, and tank-truck driver (semi-skilled jobs).  In most medium jobs, being on

Beginning January 1, 2013, however, the ALJ determined that Montgomery's RFC was reduced to less than the full range of sedentary work. (Tr. 23-24).[4]

### III.     Steps Four and Five

The ALJ concluded at step four of the sequential evaluation process that Montgomery was unable to perform his past relevant work. (Tr. 24). Accordingly, he proceeded to step five. At this step, the ALJ determined that Montgomery was an individual of advanced age, with at least a high school education, and the ability to communicate in English. (Tr. 24-25). Transferability of skills was immaterial prior to January 1, 2013, but, in any event, he had no transferrable job skills. *Id*. The ALJ then observed that, given Montgomery's vocational factors, and the ability to perform the full range of medium work, the Medical-Vocational Guidelines directed a finding of *not disabled* prior to January 1, 2013. 20 C.F.R. § 404.1569; Rule 203.15, Table 3, Appendix 2, Subpart P, Regulations No. 4. *Id*. Beginning January 1, 2013, however, Montgomery's RFC was reduced to less than sedentary, thus mandating a finding of *disabled* pursuant to Medical-Vocational Rule 201.06. *Id*.

---

one's feet for most of the workday is critical. Being able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time.

TITLES II AND XVI: DETERMINING CAPABILITY TO DO OTHER WORK--THE MEDICAL-VOCATIONAL RULES OF APPENDIX 2, SOCIAL SECURITY RULING 83-10.

[4] Sedentary work entails:
. . . lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. 404.1567(a).

## Analysis

I.   **Chronology of Relevant Medical Evidence**

The earliest medical reports in the instant record date from 2008-2010 and reflect innocuous office visits by plaintiff to his general practitioner, James M. Smith, M.D., for treatment of acute nasal and respiratory symptoms. (Tr. 197-199).

In April 2012, J. M. Smith, M.D., wrote to the state agency that Montgomery had poorly controlled diabetes because of his non-compliance with medication and diet. (Tr. 195). He further remarked that Montgomery had no ulceration of the lower extremities. *Id*. Smith opined that Montgomery could walk and stand for normal periods during the day. *Id*. In fact, if his diabetes were better controlled, he could do even more. *Id*. Smith concluded by noting that Montgomery had a normal range of motion in his lumbrosacral spine. *Id*.

On May 10, 2012, Montgomery underwent a consultative examination administered by David Hebert, M.D., at the request of the state agency for purposes of Montgomery's prior disability application. (Tr. 205-207). Montgomery reported to Hebert that his chief complaints were diabetes mellitus, high blood pressure, chronic back problems, stomach problems, and wrist pain. *Id.* He reported that he had been experiencing lumbar pain for at least three years. *Id.* Montgomery stated that the pain was non-radiating, but severe, which prevented him from picking up anything weighing more than 20 pounds. *Id.* His knees also had been hurting him for three years, and were painful to motion, kneeling, and traversing steps. *Id.* In addition, his right wrist had been painful. *Id.*

Montgomery reported a 14 year history of diabetes mellitus and arterial hypertension. *Id.* Nonetheless, he demonstrated no difficulty ambulating about the office. *Id.* His vision was 20/25 bilaterally, without corrective devices. *Id.* He exhibited full range of motion of the lumbar

spine. *Id*. Straight leg raise was negative bilaterally. *Id*. His gait and station were completely normal without assistive devices. *Id*. He experienced minimal difficulty walking on heels and tiptoes. *Id.* He had a full range of motion in all peripheral joints, and no motor or sensory deficits. *Id.* His motor strength was 5/5 in all areas with 5/5 bilateral handgrip; hand dexterity, and good grasping ability. *Id*. X-rays of the lumbar spine showed normal, intact spine. *Id*. There was no evidence of degenerative disc disease, osteoarthritis, previous fractures, or mal-alignments of the spine. *Id.* Hebert diagnosed diabetes mellitus, type 2, with no clear evidence of end-organ damage; arterial hypertension, well-controlled; history of gastroesophageal reflux disease, which was asymptomatic; non-specific arthralgias of the lumbar spine, wrists, and knees, with no significant impairment of function of those joints at that time. *Id*. Medically, Hebert saw no reason why Montgomery could not perform routine walking, sitting, standing, carrying, and lifting for an eight-hour day. *Id.*

On July 13, 2012, Montgomery complained to Dr. J. M. Smith of right lower back pain that radiated to his right leg. (Tr. 201). He had fallen and hit his right hip. *Id.* He exhibited decreased range of motion with bending at the waist. *Id.* Montgomery returned to Dr. Smith on September 17, 2012, with complaints of nocturnal leg pain. (Tr. 202).

On November 16, 2012, Montgomery saw Jack Noble, M.D., for cough and congestion. (Tr. 235-237). At that time, Montgomery denied back pain, joint pain, joint swelling, arthritis, and sciatica. *Id*. Moreover, his musculoskeletal examination was normal. *Id.*

On November 26, 2012, Montgomery saw Richard D. Smith, M.D. for the first time. (Tr. 228-234). He complained of lumbar pain and stiffness in his right leg and hoarseness. *Id.* He described the severity of his symptoms as a 10/10. *Id.* Upon examination, Montgomery had decreased reflexes and weakness. *Id.* Straight leg raise was abnormal, tender upon palpation,

with decreased range of motion.  *Id.*  Smith diagnosed diabetes mellitus, sciatica, and lumbar radiculopathy.  *Id.*  He prescribed diclofenac sodium for Montgomery's back pain.  *Id.*

On December 11, 2012, Montgomery returned to Richard Smith, M.D., for a check-up. (Tr. 218-221).  He again complained of back and right leg pain with symptoms radiating to his right leg.  *Id.*  He described the severity as an 8/10.  *Id.*  He first noticed the symptoms months ago.  *Id.*  His symptoms worsened with movement and bending.  *Id.*  Upon examination, his straight leg raise was abnormal, tender upon palpation, with decreased range of motion.  *Id.*  Smith diagnosed lumbar radiculopathy, sciatica, and diabetes mellitus.  *Id.*  This time, he prescribed hydrocodone-acetaminophen.  *Id*.

Montgomery again saw Richard Smith, M.D., on January 28, 2013.  (Tr. 214-217).  He complained of pain in his back and right leg, with symptoms radiating to his right leg.  *Id.*  The severity was 9/10.  *Id.*  Montgomery explained that his symptoms usually lasted for months, and worsened with movement and walking.  *Id.*  Upon examination, he exhibited decreased reflexes and weakness.  *Id.*  His straight leg raise was abnormal.  *Id*.  He was tender to palpation, and had a decreased range of motion.  *Id.*  Smith diagnosed lumbar back pain with radiculopathy, and sciatica.  *Id*.

On February 25, 2013, plaintiff saw Cynthia Brown-Manning, M.D.  (Tr. 238-240).  She diagnosed lumbago; neuralgia; radiculitis, unspecified; unspecified hypertension; type II diabetes mellitus; and muscle spasms.  *Id.*  Montgomery reported chronic back pain that started more than one year earlier.  *Id.*  He experienced daily symptoms, which had worsened since onset.  *Id.*  His pain radiated to his thighs and was described as a 10/10.  *Id.*  His symptoms were aggravated by lying down, bending, coughing, standing, and twisting.  *Id.*  Associated symptoms included leg pain, tingling, and weakness.  *Id*.  Montgomery indicated that his leg pain occurred at work years

earlier. *Id*.

A March 15, 2013, MRI of the lumbar spine revealed mild multilevel degenerative joint disease, central disc bulging at the L5-S1 level encroaching slightly on the S1 nerve roots. (Tr. 242-243).

Dr. Manning's notes from March 18, 2013, reflect a positive straight leg raise test and decreased sensation and strength on the right side. (Tr. 245-247).

On May 20, 2013, Dr. Manning completed an attorney-supplied medical source statement. (Tr. 248). She indicated *inter alia* that Montgomery could lift nothing, and never bend stoop, or balance. *Id*. She described his pain as extreme. *Id.*

On May 16, 2013, at the request of the ALJ, Montgomery was examined by orthopedist James L. Zum Brunnen, M.D. (Tr. 250-251). Montgomery stated that he had lumbar pain that radiated mostly to the right leg for about one year. *Id.* Montgomery said that it "just came on." *Id*. He also reported having trouble with right shoulder and knee pain. *Id.* He used a cane. *Id.* His cervical spine motion was limited to 50 percent and was painful. *Id*. His right shoulder had a 50 percent loss of motion in all planes. *Id*. His left shoulder seemed normal. *Id.* Montgomery allowed no motion of the lumbar spine. *Id.* Zum Brunnen could not perform a valid test of the right hip because moving the leg caused plaintiff too much lumbar pain. *Id*. The knee joints showed no abnormality. *Id.*

Zum Brunnen noted that Montgomery did not appear to be able to walk or stand properly. *Id*. Furthermore, he would not be able to sit for more than one hour at a time. *Id*. He remarked that Montgomery demonstrated more symptoms regarding his right lower extremity than usually associated with the MRI findings. *Id*. He surmised that Montgomery could have nerve root compression. *Id.* Zum Brunnen opined that Montgomery would have limited walking, standing,

10

and carrying ability. *Id.* He diagnosed right sciatica, lumbar disc protrusion, and lumbar spinal stenosis at L5-S1. *Id.* Zum Brunnen also completed a medical source statement. (Tr. 252-257). He indicated, *inter alia*, that Montgomery could occasionally lift and carry up to 20 pounds, but no more than that. *Id*. Montgomery also could not bend over to lift. *Id.* He could sit, stand, and walk for a total of no more than five hours per day. *Id*. For the remainder of the workday, he would need to be recumbent. *Id*. Zum Brunnen also indicated that a cane was medically necessary. *Id.* Montgomery could never operate foot controls, and reaching was limited with his right hand. *Id*. Unfortunately, Zum Brunnen did not hazard an opinion as to the onset date of the foregoing limitations. *Id.*

**B.    Discussion**

Social Security Ruling 83-20 outlines the policy and procedure by which the Commissioner should determine the onset date of a disability. TITLES II AND XVI: ONSET OF DISABILITY ("SSR 83-20") (1983). The court incorporates the following pertinent excerpts:

> [t]he onset date of disability is the first day an individual is disabled as defined in the Act and the regulations. Factors relevant to the determination of disability onset include the individual's allegation, the work history, and the medical evidence. These factors are often evaluated together to arrive at the onset date.
> 
> \*        \*        \*
> 
> With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining the proper onset date is particularly difficult, when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available. In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process.
> 
> \*        \*        \*
> 
> In determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available. When the medical or work evidence is not consistent with the allegation, additional

> development may be needed to reconcile the discrepancy. However, the established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record.
> Precise Evidence Not Available--Need for Inferences
>
> In some cases, it may be possible, based on the medical evidence to reasonably
>
> infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. **At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred.** If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.
>
> *     *     *
>
> The onset date should be set on the date when it is most reasonable to conclude from the evidence that the impairment was sufficiently severe to prevent the individual from engaging in SGA (or gainful activity) for a continuous period of at least 12 months or result in death. **Convincing rationale must be given for the date selected.**

SSR 83-20 (emphasis added).

Citing SSR 83-20, the Fifth Circuit has confirmed that, in cases involving slowly progressive impairments, where the medical evidence regarding the onset date of a disability remains ambiguous and the Commissioner must infer the onset date, the inference must be made with the assistance of a medical advisor. *Spellman v. Shalala*, 1 F.3d 357, 362 (5th Cir. 1993) (citations omitted).

In this case, Drs. Zum Brunnen and Manning each completed medical source statements in May 2013, that found extreme limitations of functioning attributable to plaintiff's lumbar disc disease. (Tr. 248, 252-257). However, the ALJ determined that, prior to January 1, 2013, plaintiff's "back problems" were non-severe impairments. (Tr. 21). It so doing, it is manifest that he relied on Dr. Hebert's May 2012 consultative report, which did not include any definitive

diagnosis of spinal impairment. *See* Tr. 22-23. However, Dr. Hebert's impression was premised, at least in part, on the dearth of objective evidence to identify any specific spinal impairment. *Id*. Of course, approximately ten months later, an MRI of the lumbar spine revealed objective evidence to support plaintiff's subjective complaints of back pain radiating to his leg(s). (Tr. 242-243). Whether or not the irregularities identified by the MRI would have been present in May 2012 – thereby undermining the basis for Dr. Hebert's opinion – is unknown.

In any event, the medical evidence confirms that in July 2012, Montgomery complained to Dr. J. M. Smith of right lower back pain that radiated to his right leg (possibly caused by a fall). (Tr. 201). In September, Montgomery returned to Dr. Smith with complaints of nocturnal leg pain. (Tr. 202). Smith diagnosed degenerative joint disease of the back at that time *Id*. At his first visit with Dr. Richard Smith on November 26, 2012, plaintiff demonstrated decreased reflexes and range of motion, a positive straight leg test, and received a diagnosis of lumbar radiculopathy. (Tr. 228-234).

Thus, even if Dr. Hebert's report could support a finding that plaintiff's back impairment was non-severe in May 2012, the uncontroverted medical and testimonial evidence establishes that by November 26, 2012, Montgomery's back impairment had progressed to the point that it potentially affected his ability to work. Although the ALJ remarked that Dr. Richard Smith did not assign any significant functional limitations, Tr. 23, there is no indication that Dr. Smith considered the effects of plaintiff's impairments. Moreover, plaintiff was not even working at that time.

In his decision, the ALJ stated that it was reasonable to conclude that the debilitating limitations of functioning endorsed by Dr. Zum Brunnen should be extended retroactively only

until January 1, 2013. (Tr. 24). However, there is no evidence to support January 1, 2013, as the date that plaintiff's back pain first began to significantly impact his ability to work. Rather, the *latest* date supported by the existing record is November 26, 2012, with evidence of onset between July-September 2012 – or earlier, if the conditions revealed by the 2013 MRI were present in May 2012, thus undermining Dr. Hebert's findings. (Tr. 201).[5]

For these reasons, the court finds that the ALJ's step two determination that, prior to January 1, 2013, plaintiff's radiating back pain was a non-severe impairment that did not affect his ability to work, is not supported by substantial evidence. Furthermore, despite the requirement that the ALJ must consider *all* of plaintiff's medically determinable impairments in his residual functional capacity assessment,[6] it is evident that this was not done for the period at issue. Indeed, the record is devoid of a medical source statement that supports the ALJ's RFC for the period prior to January 1, 2013. Moreover, plaintiff's own testimony was not consistent with the ALJ's RFC. (Tr. 45-60). Under these circumstances, the court is compelled to find that the ALJ's assessment is not supported by substantial evidence. *See Williams v. Astrue*, 2009 WL 4716027 (5th Cir. Dec. 10, 2009) (unpubl.) ("an ALJ may not rely on his own unsupported

---

[5] The court notes that plaintiff reported to Dr. Manning that his chronic back pain began more than one year before February 25, 2013. (Tr. 238-240). However, on December 11, 2012, he told Dr. Richard Smith that he first noticed his symptoms "months" ago. (Tr. 219). Moreover, he told Dr. Zum Brunnen in May 2013 that he had been experiencing his radiating lumbar pain for about one year, i.e. since May 2012. (Tr. 250-251).

The court notes that unless the Commissioner decides to reopen Montgomery's prior application, it seems that the earliest onset of disability for purposes of the instant application is limited to May 18, 2012 – the day after the final denial of plaintiff's prior application. *See* Tr. 59, 137. The parties, however, did not discuss this issue in their memoranda; it may be addressed on remand, as warranted.

[6] Tr. 19 (citing *inter alia*, 20 C.F.R. § 404.1545(a)(2).

opinion as to the limitations presented by the applicant's medical conditions"); *Ripley v. Chater*, 67 F.3d 552, 557-558 (5th Cir. 1995) (substantial evidence lacking where: no medical assessment of claimant's residual functional capacity, and claimant's testimony was inconsistent with ALJ's assessment); *Butler v. Barnhart*, Case Number 03-31052 (5th Cir. 06/02/2004) (unpubl.) (in the absence of medical opinion or evidence establishing that the claimant could perform the requisite exertional demands, the ALJ's determination is not supported by substantial evidence).

Relatedly, the court further finds that plaintiff's back pain constitutes a slowly progressive impairment, with ambiguous medical evidence regarding the disability onset date. Accordingly, the ALJ was obliged to infer the onset date, with the assistance of a medical advisor. *Spellman v. Shalala*, 1 F.3d 357, 362 (5th Cir. 1993) (citations omitted). This, he did not do.

The foregoing errors tainted the ALJ's step five determination, and thus, materially affected his decision for the period prior to January 1, 2013. Remand is required.[7]

## **Conclusion**

For the above-stated reasons,

IT IS RECOMMENDED that the Commissioner's decision be REVERSED and REMANDED pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings

---

[7] The courts enjoy the authority to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. 42 U.S.C. §405(g). When reversal is warranted, the matter is remanded with instructions to make an award only if the record enables the court to conclusively determine that the claimant is entitled to benefits. *See Ferguson v. Heckler*, 750 F.2d 503, 505 (5th Cir. 1985); *see also Rini v. Harris*, 615 F.2d 625, 627 (5th Cir.1980) (reversing and remanding with direction to enter judgment where the evidence was not substantial and the record clearly showed the claimant's right to benefits). The instant record is not so disposed.

consistent herewith.[8]

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 5th day of January 2016.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE

---

[8] The court need not consider plaintiff's additional arguments. These issues may be addressed upon remand.